## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):    The Court GRANTS Plaintiff's Motion for Preliminary
Approval of Class Settlement**

Before the Court is Plaintiff Jeremey Salazar's ("Plaintiff") motion for preliminary
approval of a class action settlement.  *See* Dkt. # 35 ("*Mot.*").   The Court considers this matter
appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); L.R. 7?15.  After
considering the arguments in the moving papers, the Court **GRANTS** the motion for preliminary
approval of class certification for settlement purposes and of the settlement.

I.     Background

This consumer class action arises from Plaintiff's allegations that Defendant Midwest
Servicing Group, Inc. ("Defendant") sent Plaintiff and other similarly situated consumers letters
in attempt to collect upon an alleged debt which were in violation of 15 U.S.C. §§1692 *et seq.*,
the Fair Debt Collection Practices Act ("FDCPA").[1]  *Mot.* 7.

Plaintiff alleges that the letters demanded payment to occur within thirty days, while the
FDCPA establishes a consumer's right to dispute the validity of an alleged debt within thirty
days.  *See* 15 U.S.C. § 1692 g(b); *Mot.* 9.  Plaintiff filed suit on January 6, 2017, on behalf of
himself and others who had received the same letter ("Class Members"), asserting one cause of
action for violation of FDCPA § 1692g(b).  *See generally* Dkt. # 1, *Complaint*.

The parties ultimately reached a settlement of the claim ("the Settlement Agreement")
that provides for a $2,200.00 settlement amount, in return for which Plaintiff and Class Members

---

[1]  Plaintiff's motion refers to the "Fair Debt Collection Procedures Act;" the correct name of the
statute is the Fair Debt Collection Practices Act.  In any event, the Court will refer to it as the
"FDCPA."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

will release and discharge Defendant from all claims arising out of or relating to Defendant's sending of the letters. *Mot.* 7. Plaintiff now moves for preliminary approval of the Settlement Agreement and certification of the proposed settlement class for settlement purposes only. *See generally Mot.*

II.     Class Certification for Settlement Purposes

Plaintiff seeks to certify a class for settlement purposes only, defined as:

(1) All individual consumers within the United States;
(2) who allegedly owed a consumer debt;
(3) who Defendant sent a written correspondence similar or identical to the November 14, 2016 form letter Plaintiff received;
(4) which was not returned as undeliverable;
(5) within the one year prior to when Plaintiff filed the instant action.

*Mot.* 9–10.

When parties settle an action prior to class certification, the Court is obligated to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether [the] proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 952 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

A.     Legal Standard

Parties seeking certification of a settlement-only class must still satisfy the Federal Rule of Civil Procedure 23 standards. *See id.* at 1019–24. Under Rule 23, a plaintiff must satisfy the four prerequisites of Rule 23(a) *and* demonstrate that the action is maintainable under Rule 23(b). *See Amchem*, 521 U.S. at 613–14. The four prerequisites of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiff seeks certification under Rule 23(b)(3), *see Mot.* 23–24, which requires that "questions of law or fact common to class members predominate over any questions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

B.        Discussion

i.        *Numerosity*

The first requirement for maintaining a class action under Rule 23(a) is that the class is "so numerous that joinder of all members would be impracticable." Fed. R. Civ. P. 23(a)(1). Courts generally presume numerosity when there are at least forty members in the proposed class. *See Charlebois v. Angels Baseball, LP*, No. SACV 10-0853 DOC (ANx), 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011).

Here, Plaintiff asserts that the proposed Class is currently estimated to be 110 individuals. *Mot.* 10. The Class is sufficiently numerous so as to make joinder impracticable. *See id.* 16. Numerosity is therefore satisfied.

ii.        *Commonality*

To fulfill the commonality requirement of Rule 23(a)(2), plaintiffs must establish questions of law or fact common to the class as a whole. *See* Fed. R. Civ. P. 23(a)(2). The class claims must depend on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted). For the purposes of Rule 23(a)(2), even a single common question satisfies the requirement. *See id.* at 359; *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)).

Here, Plaintiff states that Class Members' claims arise from common, uniform practices which allegedly applied to all Class Members, and involve common questions of law and fact, including but not limited to:

1. Whether the letter mailed by Defendant violates the FDCPA; and

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

2. Whether Plaintiff and Class Members have sustained damages as a result of Defendant's wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining damages.

*Mot.* 18. Defendant's alleged practice of sending a letter that violates the FDCPA results in common questions as to the affected Class Members. Commonality is therefore satisfied.

        *iii.*        *Typicality*

Typicality requires a showing that the named Plaintiffs are members of the class they represent and that their claims are "reasonably coextensive with those of absent class members," but not necessarily "substantially identical." Fed. R. Civ. P. 23(a)(3); *Hanlon*, 150 F.3d at 1020. The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The typicality and commonality requirements somewhat overlap. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

Here, Plaintiff states that every member of the proposed class is alleged to have received an identical letter to that received by Plaintiff. *Mot.* 18. Each member of the class therefore has the same claims against Defendant and each claim would be susceptible to the same defenses. *Id.* Because Plaintiff's claims and those of the proposed class all arise from the same event (the receipt of the standardized form letter), typicality is satisfied.

        *iv.*        *Adequacy*

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "[t]he proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Here, Plaintiff has no apparent conflicts of interest with other Class Members and has "demonstrated his desire and ability to vigorously prosecute this action." *Mot.* 19. Plaintiff's interests are aligned with those of the Class Members, as they all seek relief under the same facts and legal theories. *Id.* Plaintiff's counsel, Martin & Bontrager, also does not appear to have any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

conflict of interest with the Class Members. *Id.* 20. Additionally, Plaintiff's counsel has litigated over 2,000 cases and has a "history of aggressive, successful prosecution of consumer rights litigation and consumer class actions." *Id.* Adequacy is therefore satisfied.

      *v.*    *Predominance and Superiority*

    Having concluded that Plaintiff satisfies the Rule 23(a) factors, the Court now turns to Rule 23(b)(3). Rule 23(b)(3) provides that a class may be certified where common questions of law or fact predominate over individual questions and a class action is the superior method for adjudicating the controversy as a whole. *See* Fed. R. Civ. P. 23(b)(3). The predominance aspect specifically "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. In claims arising under the FDCPA, predominance is typically found where "defendants have engaged in standardized conduct toward members of the proposed class." *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 595 (E.D. Cal. 1999). Here, Defendant's "standardized conduct" is the mailing of identical form letters to Class Members. As such, the common question of whether that letter violates the FDCPA is common to the entire class, and predominates over individual issues.

    As for superiority, requiring 110 Class Members to litigate their claims separately would be inefficient and costly, resulting in duplicative and potentially conflicting proceedings. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated."). Class members could face difficulty finding legal representation, and could lose incentive to bring their claims if forced to do so in isolation. *See In re Napster, Inc. Copyright Litig.*, No. C 04-1671 MHP, 2005 WL 1287611, at *8 (N.D. Cal. June 1, 2005) (finding superiority in part because "many small composers individually lack the time, resources, and legal sophistication to enforce their copyrights"). It is also unlikely that Class Members would pursue individual claims for relatively small damages, as doing so would be uneconomical for potential plaintiffs. *See Hanlon*, 150 F.3d at 1023. Thus, a class action would be the superior method for adjudicating this action.

    The Court therefore finds the Rule 23(b)(3) predominance and superiority requirements satisfied.

    C.    <u>Conclusion</u>

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

Plaintiff has met the requirements for class certification under Rule 23. Therefore, the Court **CERTIFIES** the proposed class for settlement purposes only.

III.   Preliminary Approval of the Proposed Class Action Settlement

The next step is to determine whether the settlement reached is "fair, reasonable, and adequate" under Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2).

A.   Legal Standard

The approval of a class action settlement is a two-step process under Rule 23(e) in which the court first determines whether a proposed class action settlement deserves preliminary approval. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-6352 MMM (CGx), 2014 WL 10212865, at *5 (C.D. Cal. July 28, 2014). "At the preliminary approval stage, a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010). Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *See Manual for Complex Litigation* (Fourth) § 13.14. Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-2161 DOC, 2014 WL 360196, at *4 (C.D. Cal. Jan. 31, 2014); *see also Eddings v. Health Net, Inc.*, No. CV 10-1744 JST (RZx), 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013).

After notice is given to the class, preliminary approval is followed by a review of the fairness of the settlement at a final fairness hearing and, if appropriate, a finding that it is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1027. In making this determination, the district court must balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026; *see also Staton*, 327 F.3d at 959; *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|----------|-------------------|------|--------------|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026. The district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Because it is provisional, courts grant preliminary approval of a class action settlement where the proposed settlement does not disclose grounds to doubt its fairness and lacks "obvious deficiencies." *In re Vitamins Antitrust Litig.*, No. MISC 99-0197(TFH), 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation* (Third) § 30.41).

> B.      Overview of the Settlement Agreement

Under the Settlement Agreement, Defendant will pay a settlement amount of $2,200.00. *Mot.* 7. Defendant will also pay, separate and apart from the settlement amount, $49,000.00 in attorneys' fees; (3) settlement administration costs of $7,500.00; and (4) the class representative service award of $1,000.00. *Id.* 8. Defendant will also cease using the form letter that was the subject of the litigation. *Id.*

> C.      Analysis of Settlement Agreement

> i.      *Fair and Honest Negotiations*

In general, evidence that a settlement agreement is arrived at through genuine arms' length bargaining with a private mediator supports a conclusion that the settlement is fair. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution."); *Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.*, No. CV 10-1777 AJB (NLSx), 2012 WL 3809123, at *1 (S.D. Cal. Sept. 4, 2012) (holding that a settlement should be granted preliminary approval after the parties engaged in extensive negotiations); *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014) (declining to apply a presumption but considering the arms-length nature of the negotiations as evidence of reasonableness).

Here, the Settlement was reached after extensive settlement discussions and negotiations, including a private mediation session on August 15, 2017, conducted by the Honorable Leo S.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

Papas (Ret.).  *See* Dkt. # 35-2, *Declaration of G. Thomas Martin, III* ("*Martin Decl.*") ¶ 13; *Mot.* 13.  At mediation, the parties reached an agreement.  *Martin Decl.* ¶ 13.

Prior to mediation, the parties conducted significant formal and informal discovery and investigations.  After the Complaint was filed, Plaintiff's counsel propounded multiple sets of written discovery on Defendant and reviewed its responses thereto.  *Id.* ¶ 11.  Both parties' investigation and discovery efforts enabled them to intelligently and effectively negotiate the Agreement.

There is no indication that the negotiations were dishonest or collusive in any way, and the extensive discovery conducted in this case suggests that the parties were well informed and had sufficient information to assess the merits of their claims.  *See Glass v. UBS Fin. Servs., Inc.*, CV 06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (reasoning that the parties' having undertaken informal discovery prior to settling supports approving the class action settlement).

The Court is therefore satisfied that the Settlement is the product of fair and honest negotiation.

### ii.    *Settlement Amount*

To evaluate whether a settlement falls within the range of possible approval, "courts consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the settlement amount is $2,200.00.  Based on the number of consumers who received the letter, Plaintiff estimates a class of 110 individuals, and a maximum damages award of "far below the $2,200.00 settlement fund achieved" if the case proceeded to trial.  *Martin Decl.* ¶ 21.  Because statutory damages under the FDCPA are capped at one percent of Defendant's net worth and the parties agree that $2,200.00 "far exceeds one percent of Defendant's net worth," this award is within the range of approval.  *See* 15 U.S.C. § 1692k; *Mot.* 25; *see also In re Mego*, 213 F.3d at 456, 459 (comparing a nearly $2 million gross settlement payment to a potential recovery figure of $12 million and finding that recovering "roughly one-sixth of the potential recovery" was fair and adequate under the circumstances of the case); *Glass*, WL 221862, at *4 (approving a settlement for unpaid overtime wages where the settlement amount constituted approximately 25 percent of the amount plaintiffs might have proved at trial); *Rigo v. Kason Indus., Inc.*, No. CV 11-0064 MMA (DHBx), 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) ("[D]istrict courts have found that settlements for substantially

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with the litigation.").

Individual awards will be determined by dividing the total settlement amount by the total number of Class Members; if none of the 110 Class Members opts out, each will receive an award of $20.00. If any qualified Class Member opts out of the settlement, the amount paid to each qualified Class Member will be increased on a pro rata basis. *See Martin Decl*. ¶ 20. Prior to the final approval hearing, Class Counsel will provide the results of the administration of the Settlement as of that date, so the Court can evaluate the amount of the Individual Settlement Awards.

The Settlement Agreement confers a substantial benefit on Class Members who would face significant risk of no recovery and ongoing litigation expense if forced to proceed with litigation. Plaintiff's counsel considered the "highly contested issues, as well as the risks, uncertainty, and costs of further litigation of this action, the financial status of Defendant, and the burden and expense of trial." *Mot*. 8. The Settlement Agreement's elimination of risk, delay, and further expenses weighs in favor of approval. In light of the delay and expense associated with continued litigation, the Court finds that the settlement amount is within the range of approval.

       *iii.*   *Attorneys' Fees and Costs*

When approving attorneys' fees in common fund cases, courts in the Ninth Circuit have discretion to apply the percentage-of-the-fund method or the lodestar method to determine reasonable attorneys' fees. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). If employing the percentage-of-the-fund method, the "starting point" or "benchmark" award is 25 percent of the total settlement value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). The percentage can range, however, and courts have awarded more than 25 percent of the fund as attorneys' fees when they have deemed a higher award to be reasonable. *See e.g., Gardner v. GC Services, LP*, No. 10CV0997-IEG (CAB), 2012 WL 1119534, at *7 (S.D. Cal. Apr. 2, 2012) (finding as reasonable a departure from the 25 percent benchmark where the results achieved were favorable, the risks of litigation were substantial, and the case was complex); *In re Mego*, 213 F.3d at 463 (upholding district court's award of 33 1/3 percent of the settlement fund); *Knight v. Red Door Salons, Inc.*, No. 08-1520 SC, 2009 WL 248367, at *17 (N.D. Cal. Feb. 2, 2009) ("[N]early all common fund awards range around 30%.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

Here, Class Counsel will request an attorneys' fees award in an amount not to exceed $49,000.00, and costs and expenses not to exceed $7,500.00.  *Mot.* 7.  Because the contemplated attorneys' fees award is greater than the 25 percent "benchmark" established in this Circuit, Class Counsel must justify an upward departure from the 25 percent benchmark under the *Vizcaino* factors.  *See Vizcaino*, 290 F.3d at 1048–50 (examining "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by plaintiffs; and (5) awards made in similar cases").

Class Counsel will submit additional information regarding the work performed and request for attorneys' fees, as well as a detailed summary of its costs and expenses, in connection with its Motion for Attorneys' Fees, to be considered at the time of the final approval hearing. *Martin Decl.* ¶ 23.  Class Counsel is further instructed to provide the Court with additional memoranda showing the requested hourly rate and hours expended in this case so that it can calculate the lodestar value and determine if use of a multiplier is required and acceptable.

### iv.    Administration Costs

The Settlement Administrator's fees and expenses are currently estimated not to exceed $7,500.00 and will be paid separately from the settlement amount. *Id.* ¶ 6.  Class Counsel has obtained a bid from Kurtzman Carson Consultants ("KCC, LLC") for the estimated settlement administration costs in this matter. *Id.* ¶ 29.

This request is reasonable in light of the proposed class size of approximately 110 people, and the costs and expenses associated with administering the notices, processing claims, and disbursing benefits.  *See Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ,  2014 WL 2926210, at *2 (approving an estimated $15,000 claims administrator fee for sixty-eight claims); *Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010) (granting $10,000 to the claims administrator for 156 claims).

### iv.    Incentive Awards

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F. 3d at 958. When considering requests for service payments, courts consider five factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *See Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Furthermore, courts typically examine the propriety of an incentive award by comparing it to the total amount other class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

members will receive and considering the efforts the plaintiff made in furtherance of the litigation. *See Staton*, 327 F.3d at 975.

Here, the Settlement Agreement provides that named Plaintiff will request an incentive award in an amount not to exceed $1,000. *Mot*. 13. The Court notes that this award seems high in relation to the potential recovery for each Class Member, but it will determine the reasonableness of the requested incentive award when ruling on Plaintiff's Motion for Final Approval, in which Plaintiff is directed to submit a declaration outlining Plaintiff's efforts expended on behalf of the Class.

>        v.        Cy Pres *Distribution*

Lastly, the Court notes that there is no mention in Plaintiff's motion of a *cy pres* distribution. *See generally Mot*. However, the Settlement Agreement itself states that "any amount remaining in the Settlement Fund Account from uncashed settlement checks [will go] to one or more *cy pres* recipients that are agreed upon by the Parties and approved by the Court." *See* Dkt. # 35-3, *Settlement Agreement and Release* ("*Agreement*") *Agreement* 10. If that is indeed the case, the parties are ordered to submit to the Court their intended *cy pres* recipient for evaluation. If there is no *cy pres* distribution, the parties are ordered to explain the process by which any uncashed checks will be handled.

>    D.    Notice to Class Members

Before the final approval hearing, the Court requires adequate notice of the settlement be given to all class members. Federal Rule of Civil Procedure 23 provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the Class Notice will be provided on a website in both English and Spanish, and will include the Preliminary Approval Order, Long Form Notice, Settlement Agreement, claim form, Class Counsel's motions for attorneys' fees, costs, and incentive award, the details of the settlement, the rights of Class Members, and how to opt out or object to the settlement. *See* Dkt. # 35-3, *Settlement Agreement and Release* ("*Agreement*") 10. This information will also be mailed to potential Class Members no later than fourteen (14) days after entry of this order. *Id.* No later than thirty (30) days after entry of this order, the Claims Administrator will also provide notice by first class postcard. *Id* 11. No later than thirty (30) days after entry of this order, the Claims Administrator will establish a toll-free telephone number for receiving calls related to the settlement, and it will be operational until sixty (60) days after the opt-out and objection deadline. *Id.* After that period, for a period of ninety (90) days, a recording or a person will advise any caller that the opt-out and objection deadline has passed, and will direct them to the settlement website. *Id.*

Within fourteen (14) days of entry of the this order, Defendant will provide the Claims Administrator with each Class Member's full name and last known address. *Id.* 10. The Claims Administrator will use a reverse look up database to obtain any addresses it does not have. *Id.* 11. Class Counsel does not indicate how any returned or non-deliverable notice packets will be handled.

Class Members will have until sixty (60) days after entry of this order to submit an objection or to be excluded from the class; after that deadline, the parties will submit to the Court a list of objections and valid opt-outs. *See Agreement* 9.

IV.   <u>Conclusion</u>

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The Court **PRELIMINARILY APPROVES** the Settlement Agreement and **CERTIFIES THE CLASS FOR SETTLEMENT PURPOSES**. The final approval hearing is set for **<u>October 1, 2018</u> <u>at</u> <u>1:30 PM</u>**.

The Court also **ORDERS** at least thirty days before the final approval hearing and in addition to the motion for final approval for class action settlement:

·      A memorandum justifying Class Counsel's award of attorneys' fees and costs that includes declarations supporting the reasonableness of each attorney's requested hourly rate,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-0137-PSG-KS | Date | June 4, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

itemized billing statements showing hours worked, hourly rates, expenses incurred thus far, and expenses to be incurred in the future. The memorandum should explain in detail why an upward departure from the benchmark percentage rate is warranted;

·       A memorandum justifying the incentive award for Plaintiff, including a detailed description of Plaintiff's efforts in pursuit of this case, and supporting declaration;

·       A memorandum detailing what will be done with any uncashed claim checks and any proposed *cy pres* recipient, if applicable, as well as how any non-deliverable notice packets will be handled; and

·       A memorandum describing the process and results of the settlement administration, including the number of claimants and the settlement award to each.


**IT IS SO ORDERED.**