UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**     **The Court GRANTs Plaintiff's motions for final approval of class settlement and award of attorneys' fees, costs, and settlement award**

Before the Court are Plaintiff Jeremy Salazar's ("Plaintiff") motion for final approval of class action settlement, *Motion for Final Approval of Class Action Settlement*, Dkt. # 41 ("*Mot.*"), and motion for attorneys' fees and costs, *Motion for Incentive Award, Attorneys' Fees and Costs*, Dkt. # 40 ("*Fees Mot.*"). Defendant Midwest Servicing Group ("Defendant") has filed notices of non-opposition for both motions. *See* Dkts. # 45, 46. The Court held a final fairness hearing in this matter on October 1, 2018. Having considered the arguments in all of the submissions, the Court **GRANTS** Plaintiff's motions.

I.     Background

This consumer class action arises from Plaintiff's allegations that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., by sending Plaintiff and other similarly situated consumers letters in attempt to collect upon alleged debts. *Mot.* 6:4–8.

Plaintiff alleges that the letters demanded payment within thirty days, while the FDCPA establishes a consumer's right to dispute the validity of an alleged debt within thirty days. *See* 15 U.S.C. § 1692g(b); *Motion for Preliminary Approval of Class Settlement*, Dkt. # 35, 9:7–13. Plaintiff filed suit on January 6, 2017, on behalf of himself and others who had received the same letter ("Class Members"), asserting one cause of action for violation of FDCPA § 1692g(b). *See generally Complaint*, Dkt. # 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

The parties ultimately reached a settlement of the claim ("the Settlement Agreement") that provides for a $2,200 settlement amount, in return for which Plaintiff and Class Members will release and discharge Defendant from all claims arising out of or relating to Defendant's sending of the letters. *Mot.* 7:19–22. Plaintiff now moves for final approval of the Settlement Agreement, certification of the proposed settlement class, approval of the Class Notice distributed to Class Members, and for an order awarding attorneys' fees and costs and an incentive award. *See generally Mot.; Fees Mot.*

The Court granted Plaintiff's motion for Preliminary Approval of the Settlement Agreement on June 4, 2018. *See Order Granting Preliminary Approval of Class Action Settlement*, Dkt. # 39 ("*Prelim. Order*").

    A.    <u>Proposed Settlement Agreement</u>

The Settlement Agreement provides that Defendant will pay a settlement amount of $2,200 to the Class Members. *Mot.* 7:17–22. Defendant has also agreed to pay, separate and apart from the settlement amount, (1) up to $49,000 in attorneys' fees; (2) reasonable litigation costs not to exceed $7,500; and (3) the class representative incentive award of $1,000. *Id.* 7:25–8:3. Further, Defendant will pay all of the costs and expenses associated with the administration of the class settlement, which amounts to $7,500. *Id.* 12:9–19. Finally, Defendant will cease using the form letter that was the subject of the litigation. *Id.* 7:9–11; *Settlement Agreement*, Dkt. # 41-3, ¶ 5.02.

In exchange, Class Members will be deemed to have released Defendant of all claims against it arising out of or related to claims in this action, including but not limited to FDCPA claims. *Mot.* 12:21–24.

The parties initially sought to designate a *cy pres* recipient for any uncashed settlement checks without specifying their intended recipient. *See Settlement Agreement* ¶ 8.03. In its preliminary order, the Court ordered the parties to submit their intended *cy pres* recipients for evaluation or explain the process by which any uncashed checks will be handled. *Prelim. Order* 11. The parties have now proposed to redistribute any uncashed checks, after 210 days of their issuance, to participating class members on a pro-rata basis. *Mot.* 9:8–18. The Court is satisfied with and approves this proposal.

    B.    <u>Class Certification for Settlement Purposes</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

The Court granted preliminary approval of the Settlement Agreement and its terms, as well as the proposed Notice of Class Action Settlement ("Class Notice"), on June 4, 2018. *See Prelim. Order.* In its Order, the Court certified, for settlement purposes only, a Rule 23(b)(3) class of:

(1) All individual consumers within the United States;
(2) who allegedly owed a consumer debt;
(3) who Defendant sent a written correspondence similar or identical to the November 14, 2016 form letter Plaintiff received;
(4) which was not returned as undeliverable;
(5) within the one year prior to when Plaintiff filed the instant action.

*Id.* 2–6.

II.  Discussion

   A.  Final Approval

      i.  Legal Standard

A court may finally approve a class action settlement "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The Court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027. The Ninth Circuit has noted that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

        *ii.*     *Discussion*

              *a.*     *Strength of Plaintiff's Case*

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (internal quotation marks omitted). This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *See Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, although Plaintiff maintains his strong belief in the merits of his FDCPA claim against Defendant, he also acknowledges that "[t]he parties disagree about the merits of Plaintiff's claims, and there is uncertainty about the ultimate outcome of this litigation and whether a class would be certified." *Mot.* 16:20–22. In fact, Defendant maintains that Plaintiff's claims cannot be certified as a class action if this case were to proceed in litigation. *Settlement Agreement* ¶ 3.01. Therefore, the Court agrees with Plaintiff that this factor weighs in favor of approving the Settlement Agreement.

              *b.*     *Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *Officers for Justice*, 688 F.2d at 625. This litigation has already been underway for twenty months and, if the case were to go on trial as a class action, the fees and costs would increase exponentially. The Settlement Agreement significantly minimizes the delay and costs that litigation would entail.

Moreover, the FDCPA's damages provision is not mandatory and instead requires courts to balance various factors to determine the amount of liability, including the nature of noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which noncompliance was intentional. 15 U.S.C. § 1692k(b)(2). Therefore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

the settlement also takes into account that, even if Plaintiff had proceeded to trial and prevailed, there is "no guarantee" the Court would "award the class full statutory damages." *Id*. 16:28, 17:1. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory [under the FDCPA], continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class."). Thus, the Court agrees with Plaintiff that this factor also weighs in favor of approving the settlement.

      *c.*  *Risk of Maintaining Class Action Status Through Trial*

  Although the Court has preliminarily certified the class, the certification was for settlement purposes only. *Prelim. Order* 6. At this point, there does not appear to be any issue with maintaining the class certification, given that courts regularly certify FDCPA class actions. *See, e.g.*, *id.*; *Catala v. Resurgent Capital Servs. L.P.*, No. 08cv2401 NLS, 2010 WL 2524158 (S.D. Cal. June 22, 2010). However, if this case had not settled, Defendant may have opposed Plaintiff's motion for class certification. Further, under Federal Rule of Civil Procedure 23(c)(1)(C), an "order that grants or denies class certification may be altered or amended before the final judgment." Therefore, the avoidance of risk of maintaining class certification throughout trial favors settlement.

      *d.*  *Amount Offered in Settlement*

  "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. The Ninth Circuit has explained that "it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625 (citations omitted). Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

  The Court is satisfied that the total Class Settlement award of $2,200 is reasonable considering the circumstances. The Court considered the parties' respective opinions regarding the value and merits of this case during the preliminary approval stage and continues to find that this amount is reasonable in light of the challenges described above. *Aarons v. BMW of N. Amer., LLC*, No. CV 11–7667 PSG (CWx), 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

members will "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation").

Here, the total payment to Net Settlement is $2,200 and the average individual settlement award will be $20. *Mot.* 18:12–15. The FDCPA caps statutory damages at the lesser of one percent of Defendant's net worth or $500,000. *See* 15 U.S.C. § 1692k(A)(2)(B). Parties agree that $2,200 is "far in excess of one percent (1%) of Defendant's net worth." *Mot.* 18:10–12. Therefore, the Settlement amount is a favorable result for the class members. In fact, this settlement falls within the range of class action settlements in comparable FDCPA matters. *See, e.g.*, *Schuchardt*, 314 F.R.D. at 684 (approving FDCPA settlement of $13,610 for a class of 901 members, resulting in recovery of $15.10 per claimant); *Catala*, 2010 WL 2524158, at *3 (approving FDCPA settlement of $35,000 distributed cy pres, with no payment to class members); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) (approving a $40,000 fund for 49,156 class members, of which 5,082 claimants recovered $7.87 each); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (preliminary approval of an FDCPA settlement of $21,759 for 2,834 members, providing each member approximately $7.32); *Cope v. Duggans*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA settlement of $11.90 per claimant); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (preliminary approval of an FDCPA settlement of $1,770 for 177 class members that would net $10 per claimant).

Therefore, in light of the results achieved and the uncertainties associated with litigating this case through trial, the Court finds that this factor too counsels in favor of approving the settlement.

    *e.*  *The Extent of Discovery and the Stage of the Proceedings*

This factor requires the Court to gauge whether Plaintiff has sufficient information to make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citations omitted).

Here, the parties engaged in both informal and confirmatory discovery surrounding Plaintiff's claims and Defendant's defenses. *Declaration of G. Thomas Martin, III*, Dkt. # 41-2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

("*Martin Decl.*"), ¶ 8.  Specifically, the parties exchanged discovery concerning the net worth of Defendant, class damages, and the number of potential class members. *Mot.* 20:18–20.  Therefore, both parties' investigation and discovery efforts enabled them to intelligently and effectively negotiate the Agreement. *See id.* 20:16–18.

The parties also participated in a good-faith, arm's-length mediation on August 15, 2017, conducted by the Honorable Leo S. Papas (Ret.). *Mot.* 6:14–15; *Prelim. Order* 8.  The Court is confident that Plaintiff had enough information to make an informed decision about the settlement based on strengths and weaknesses of their case.  This factor weighs in favor of granting approval.

    *f.*  *The Experience and Views of Class Counsel*

The recommendations of Plaintiff's counsel are given a presumption of reasonableness. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, Martin & Bontrager, APC ("Class Counsel") are experienced consumer rights litigators. *Mot.* 21:8?9.  Due to their familiarity with the case's strengths and weaknesses, Class Counsel state that the proposed Settlement Agreement is "fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action." *Martin Decl.* ¶ 10.  This factor thus weighs in favor of final approval.

    *g.*  *The Presence of a Government Participant*

This factor is neutral because there is no government entity participating in the case.

    *h.*  *Reaction of the Class Members to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, No. 11-CV-0973

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

W(KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Here, of the 110 individuals identified as potential Class Members, not a single Class Member has objected to any aspect of the settlement. *Mot.* 7:22–24, 8:5–7; *Declaration of Alysha McDonald*, Dkt. # 47 ("*McDonald Decl.*"), ¶ 6. No Class Members have requested exclusion. *Mot.* 14:2–4; *McDonald Decl.* ¶ 5. This factor thus weighs in favor of approval.

        *i.*    *Conclusion*

Having reviewed the relevant factors, the Court finds that none counsel against approval of final settlement. Therefore, the Court **GRANTS** Plaintiff's motion for final approval of the class action settlement.

    B.    <u>Motion for Attorneys' Fees, Costs, and Incentive Awards</u>

Class Counsel moves the Court for an unopposed award of: (1) $49,000 in attorney's fees; (2) reimbursement for litigation expenses in the amount of $4,695; and (3) a $1,000 incentive award for the Named Plaintiff. *Fees Mot.* 8:4?8.

        *i.*    *Attorneys' Fees*

            *a.*    *Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs. The Court "must carefully assess" the reasonableness of the fee award. *See Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003); *see also Browne v. Am. Honda Motor Co.*, No. CV 09–06750 MMM (DTBx), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).

Under the FDCPA, a successful plaintiff is entitled to receive an award of reasonable attorneys' fees and court costs. *See* 15 U.S.C. § 1692k(a)(3) ("[A]ny debt collector who fails to comply with any provision of [the FDCPA is liable] in the case of any successful action . . . [for] the costs of the action, together with a reasonable attorney's fee as determined by the court.");

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

*see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) ("The FDCPA's statutory language makes an award of fees mandatory."). This is because the legislature "chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho*, 523 F.3d at 978.

To determine attorneys' fees under the lodestar method, a court must multiply the reasonable hours expended by a reasonable hourly rate. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). The Court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Id.*

*1.     Reasonable Rate*

The reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the 'prevailing market rates in the relevant community.'") (citations omitted); *Viveros v. Donahue*, No. CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec. of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. *See, e.g.*, *Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai Corp.*, No. CV 11–02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. July 21, 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).

Here, Plaintiff is represented by counsel at Martin & Bontrager APC, a Los Angeles firm. *See generally Fees Mot.* Class Counsel assert that the attorneys who worked on this case, both partners, had hourly rates ranging from $450 to $495. *Id.* 16:24?26; *see also Summary of Fees and Costs*, Dkt. # 40-2, 14. Plaintiff further seeks $150 per hour for paralegal time. *Id.* The Court turns to the Real Rate Report: Lawyer Rates, Trends, and Analysis ("Real Rate Report") as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. *See Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *3–4 (C.D. Cal. Oct. 23, 2015). As Judge Fischer explained in *Hicks v. Toys 'R' Us-Delaware, Inc.*, the Real Rate Report is persuasive because it:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as the specific practice areas, . . . [and] it is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies—a much better reflection of true market rates than self-reported rates in all practice areas as part of a national survey of top firms.

No. CV 13-1302 DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014).

The 2016 Real Report provides a number of useful data points for assessing the reasonableness of Class Counsel's attorneys' fees requests. In Los Angeles, partners in litigation have an hourly rate ranging from $340 to $745. *See* 2016 Real Rate Report 62. In the practice area of consumer services, however, a partner has an average hourly rate between $340 and $675. *See id.* 80. Similarly situated paralegals earn an average hourly rate between $115 and $240. *Id.*

Accordingly, the Court finds that Class Counsel's hourly rates ranging from $450 to $495 for partners and $150 for the paralegal fall within the acceptable range suggested by the Real Rate Report. In sum, the Court finds Class Counsel's hourly rates reasonable because they fall within the range of prevailing rates in the Central District of California for the type of work performed in this case.

### 2. *Reasonable Hours*

An attorneys' fees award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). The standard is whether the work "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery of [] damages." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Here, Class Counsel have spent 136.10 hours—62.50 hours at $495 per hour and 73.60 hours at $450 per hour—litigating this case over twenty months. *See Fees Mot.* 16:23–26. In addition, the paralegal in the case accrued 15.10 hours. *Id.* 16:24–25. Class Counsel engaged in discovery, successfully obtained a withdrawal of Defendant's cross-complaint against Plaintiff, prepared for and attended an all-day mediation, and negotiated and revised settlement agreements. *Id.* 20:12–19. The Court has reviewed Class Counsel's detailed timesheets

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

documenting their work and finds that the 151.20 hour figure is reasonable. *See Statement of Services*, Dkt. # 40-2, 15–28.

### 3. Multiplier

Based on the aforementioned rates and hours worked, Class Counsel's collective loadstar is $66,322.50. Further, Class Counsel will continue to incur five additional hours at $495 per hour and ten hours at $450 per hour to complete the approval and settlement process. *Fees Mot.* 22:16–23. This increases the lodestar to $73,297.50. *Id.* But Counsel requests only $49,000 in fees. *Id.* 22:24–26. Because Class Counsel's requested fee award is approximately 33% *less* than the fee indicated by the collective lodestar, there is no need to apply any multiplier.

In sum, the Court finds that the requested fee amount is reasonable under the lodestar method and **GRANTS** Plaintiff's motion for attorneys' fees.

### ii. Litigation Costs

In addition to attorneys' fees, Class Counsel requests reimbursement of expenses incurred throughout litigation in the amount of $4,695. *Id.* 23:21–23. Attorneys are typically permitted to "recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048. Class Counsel has submitted a detailed record of expenses in support of this request, *Fees Mot.* 24:8–22, and the Court is satisfied that the costs are reasonable. Therefore, the Court **GRANTS** Class Counsel's request for expenses in the amount of $4,695.

### iii. Incentive Award for Plaintiff

Finally, Plaintiff Jeremy Salazar requests that the Court award him an unopposed incentive award of $1,000, the maximum statutory award under the FDCPA. *Fees Mot.* 8:22–25; *see* 15 U.S.C. § 1692k(a).

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citations omitted); *see In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014). When considering requests for case contribution awards, courts consider five factors:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Class Counsel states Mr. Salazar has acted as "lead Plaintiff throughout the nearly twenty (20) months this litigation has been ongoing." *Fees Mot.* 8:23–24. Plaintiff has been actively engaged in this action and assisted Class Counsel with "pre-litigation investigation, reviewing the Complaint and other pleadings, reviewing and executing settlement documents, reviewing motions, executing various declarations, and numerous emails and telephone conferences with Class Counsel." *Id.* 10–7:14; *Declaration of Jeremy Salazar*, Dkt. # 35-5, ¶ 9. Moreover, Plaintiff could have chosen to pursue his case on an individual basis and received his damages a long time ago, but instead he agreed to serve as lead Plaintiff in this litigation. *Fees Mot.* 9:23–27; *see Yang v. Assisted Credit Servs. Inc.*, No. SACV 15-02118 AG (JCGx), 2017 WL 9939710, at *3 (C.D. Cal. Nov. 7, 2017) (awarding statutory maximum damages of $1,000 for an FDCPA claim because "Lead Plaintiff . . . could have received his damages a long time ago if he'd proceeded as an individual plaintiff rather than go through the effort of vindicating the rights [as] the class."); *Schuchardt*, 314 F.R.D. at 691 (approving $1,000 statutory award for named plaintiff in FDCPA class action that resulted in recovery of $15.10 per claimant); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (approving $1,000 statutory damages to lead plaintiff in an FDCPA settlement that will pay $10 per class member).

The Court is satisfied that Named Plaintiff justified the award of an incentive fee in the amount of $1,000.

III. Conclusion

For the reasons stated above, Plaintiff's motions for final approval of class settlement and for approval of attorneys' fees and costs are **GRANTED**. Accordingly, it is **HEREBY ORDERED AS FOLLOWS**:

    A. The Court approves settlement of the action between Plaintiff and Defendant, as set forth in the Settlement Agreement as fair, reasonable, and adequate. The Parties are directed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-0137 PSG (KSx) | Date | October 2, 2018 |
|---|---|---|---|
| Title | Jeremy Salazar v. Midwest Servicing Group, Inc. | | |

perform their settlement in accordance with the terms set forth in the Settlement Agreement;

B. Class Counsel is awarded $49,000 attorneys' fees and $4,695 in costs. Additionally, the Named Plaintiff is awarded $1,000. The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court and the reasons stated in this Order;

C. Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Settlement Class Members for all matters relating to this litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this Order.

**IT IS SO ORDERED.**